UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FREDDY HORMAZABAL,                  Case No.
                                     Trial Ct. Case No. 2017-CF-1724

          Petitioner,

vs.

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, and ATTORNEY
GENERAL FOR THE STATE OF FLORIDA,

          Respondents.

_____/

## PETITION UNDER 28 U.S.C. § 2254 FOR WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

The Petitioner, FREDDY HORMAZABAL, by and through

undersigned counsel, and pursuant to U.S.C. §§2241 and 2254, hereby files

this Petition for Writ of Habeas Corpus, and in support thereof states as

follows:

1. Current Place of Confinement:

          Inmate #J90461
          Liberty Correctional Institution
          11064 N.W. Dempsey Barron Road
          Bristol, Florida 32321-9711

2.    Name and location of the court which entered the judgment of
conviction under attack:

Honorable Melanie Chase, Circuit Court for the Eighteenth
Judicial Circuit in and for Seminole County, Florida

3. <u>Date of judgment of conviction:</u>

June 6, 2019

4. <u>Nature of offenses involved:</u>

Count 1: Attempted Second Degree Murder with a Firearm -
Causing Great Bodily Harm
Count 2: Shooting Into a Building

5. <u>Length of Sentence:</u>

Count 1: Minimum-mandatory sentence of 25 years in prison
followed by 10 years of supervised probation
Count 2: 15 years in prison, to be served concurrent with the
sentence on Count 1

6. <u>What was your plea?</u>

Not Guilty

7. <u>Kind of trial</u>

Jury Trial

8. <u>Did you appeal from the judgment of conviction?</u>

Yes - Case No. 5D19-1949
Per Curiam Affirmed on May 12, 2020

9. <u>Other than a direct appeal from the judgment of conviction and
sentence, have you previously filed any petitions, applications, motions,
etc., with respect to this judgment in any court, state or federal?</u>

Rule 3.850 Motion for Postconviction Relief Filed on December 8, 2020

Amended Rule 3.850 Motion for Postconviction Relief Filed on September 24, 2021

Order Denying Amended Rule 3.850 Motion for Postconviction Relief without evidentiary hearing entered on February 24, 2022 - Per Curiam Affirmed by Fifth District Court of Appeal on October 25, 2022; Motion for Written Opinion Denied December 1, 2022 - Case No. 5D22-586

10.    <u>State concisely every ground on which you claim that you are being held unlawfully.  Summarize briefly the facts supporting each ground.</u>

## <u>FACTS</u>

Freddy Hormazabal was tried by jury and convicted of Attempted Second Degree Murder with a Firearm (Count I) and Shooting into a Building (Count II)[1]. (R.79-83) The state trial court sentenced Mr. Hormazabal to twenty-five years in prison (as a minimum-mandatory prison sentence), followed by ten years of supervised probation on Count I, and fifteen years in prison on Count II. (R.13)  The sentence on Count I was illegal under Florida law and was subsequently corrected (reducing the probation from ten to five years) by order of the state trial court on December 22, 2020. (R.13)

---

[1] R.18 refers to page 18 of the record on appeal filed in the Florida Fifth District Court of Appeal; TT.150 refers to page 150 of the trial transcripts on appeal

On December 8, 2020, Mr. Hormazabal filed a pro se Motion for

Postconviction Relief, alleging five separate claims of ineffective assistance

of counsel. (R.17-54)  After the State filed a written response, the state trial

court entered an order summarily denying Claims 2-5 and ordering an

evidentiary hearing on claim 1. (R.343-422)

On September 24, 2021, Mr. Hormazabal filed an amended motion

for postconviction relief, this time through counsel. (R.55-169).  The

amended motion adopted the claims previously alleged and added claims

6-8[2]. (R.55-169) The state trial court entered an order summarily denying

claims 6-8 without requiring response from the State and without holding

an evidentiary hearing. (R.289-317)  Mr. Hormazabal then voluntarily

dismissed the remaining claim (Claim 1) and the state trial court entered its

Final Order Denying Defendant's Motion for Postconviction Relief[3]. (R.320-

6)

## Claim 2 of Mr. Hormazabal's Motion for Postconviction Relief

---

[2] Mr. Hormazabal filed his first amended motion for postconviction relief on August 27, 2021. (R.170) This motion was dismissed without prejudice because it was unsworn. (R.170-2) A sworn version of the amended motion was filed on September 24, 2021. (R.173-288)

[3] Mr. Hormazabal appealed the denial of Claims 2, 6, 7, and 8 in the Florida Fifth District Court of Appeals; he did not appeal the denial of Claims 1, 3, 4, and 5.  Claims 1, 3, 4, 5 and 7 are not raised in this Petition.

In Claim 2, Mr. Hormazabal alleged that his trial attorney failed to properly advise him of the maximum penalties he faced upon conviction. (R.18;24-5;27-36).

Mr. Hormazabal was originally charged by information with one count of Attempted Second-Degree Murder with Firearm, which was incorrectly labeled as a second-degree felony, punishable by a maximum of fifteen years in prison. (R.4;174)  The State extended a plea offer of twenty years in prison with a ten-year minimum-mandatory sentence. (R.343)

During a bond hearing, the prosecutor informed Mr. Hormazabal that if he rejected the twenty-year plea offer, the State would revoke the offer and file an amended information, adding a second count of Shooting Into a Building. (R.347)  The prosecutor also stated that the State would amend Count I "so it would be a felony of the first degree". (R.347)  During the same hearing, the state trial court advised Mr. Hormazabal that, if he rejected the plea offer and the State amended the information as described, he could be sentenced to "twenty-five years day-for-day, and then a possible additional fifteen on top of the twenty-five". (R.348) The trial court did not explain the maximum penalty (life in prison) on Count I. (R.348)

Mr. Hormazabal rejected the plea offer on the record at the bond hearing and the State filed its amended information. (R.343) Mr. Hormazabal was convicted of Counts I and II after a jury trial and was sentenced to a harsher sentence than he would have received if he accepted the State's offer. (R.13)

In Claim 2, Mr. Hormazabal alleged that his trial attorney never informed him of the applicable minimum-mandatory sentencing laws, nor advised him regarding the life sentence he faced upon conviction at trial. (R.32-6)  Mr. Hormazabal alleged that, had he been properly advised of these matters, he would have accepted the State's twenty-year (with ten-year minimum mandatory) plea offer. (R.32-6)

 The State filed a written response and attached a three-page excerpt of the bond hearing, arguing that it conclusively refuted Claim Two. (R.345-9)  The state trial court summarily denied Claim Two without an evidentiary hearing, adopting the State's written response and concluding that the record refuted the claim. (R.353-4)  The trial court reasoned that any prejudice caused by trial counsel's misadvice was cured by the statements of the trial court and prosecutor during the bond hearing. (R.353-4)

## **Claim 6 of Mr. Hormazabal's Motion for Postconviction Relief**

In Claim Six, Mr. Hormazabal argued that his trial counsel was ineffective for failing to object to a jury instruction relating to self-defense. (R.173-288)  At trial, Mr. Hormazabal's sole defense was that he discharged a firearm in a lawful act of self-defense.  The state trial court provided the jury with instructions regarding the duty to retreat which are relevant only when the defendant is engaged in criminal activity at the time of their use of force. (R.60;277-8)

The state trial court summarily dismissed Claim Six without a hearing, concluding that trial counsel could not be ineffective for failing to object to the identified instruction because it was a standard jury instruction. (R.289-317)  The trial court also held that, even if trial counsel had objected to the instruction, the objection would have been denied because there was record evidence to support giving the instruction. (R.290)  The state trial court noted that there was record evidence that Mr. Hormazabal slapped a cell phone out of the victim's hand prior to his use of deadly force and therefore "did not have the right to stand his ground and utilize deadly force because he was engaged in a criminal activity". (R.291)  The state trial court added that Mr. Hormazabal could not show

prejudice, even if counsel was deficient, because "there is no possibility that the jury would have found [he] was authorized to use *deadly* force". (R.292)

### Claim 8 of Mr. Hormazabal's Motion for Postconviction Relief

In Claim Eight, Mr. Hormazabal argued that his trial counsel was ineffective for failing to object to the prosecutor's improper closing arguments. (R.190-3)  Mr. Hormazabal alleged the prosecutor improperly misstated the laws on self-defense and impermissibly shifted the burden as to this affirmative defense. (R.190-3)

The state trial court summarily denied Claim Eight without a hearing, concluding that none of the prosecutors arguments were improper. (R.294)  The trial court also reasoned that, even if the prosecutor misstated the law, these errors were remedied by the jury instructions. (R.294)

### Appeal of Rule 3.850 Denial

Mr. Hormazabal appealed the denial of Claims 2, 6, 7 and 8 of his amended motion for postconviction relief in the state appellate court.  The Florida Fifth District Court of Appeals affirmed the state trial court's summary denial of these claims in a per curiam decision, without written

opinion.  Mr. Hormazabal moved the Fifth District Court of Appeals for a written opinion and his request was denied.

## CLAIMS FOR RELIEF AND LEGAL ARGUMENT

A federal district court properly grants a defendant habeas relief where the decision of a state court involved an unreasonable application of clearly established federal law, as determined by the United States Supreme Court, or where the decision was based on an unreasonable determination of the facts in light of the evidence presented in that state court proceeding. *See* 28 U.S.C. § 2254(d).  An unreasonable application of clearly established federal law occurs when a state court identifies the correct legal rule from the United States Supreme Court but unreasonably applies the rule to the facts of the defendant's case. *See Overstreet v. Warden*, 811 F.3d 1283, 1286 (11th Cir. 2016).

When a state appellate court affirms a judgment without explanation, the federal habeas court will presume that the appellate court reached its decision on the same basis as expressed in the written decision of the lower court. *See Powell v. Allen,* 602 F.3d 1263, 1268 (11th Cir. 2010).

In *Wilson v. Sellers*, 138 S.Ct. 1188 (2018), the United States Supreme Court held that in considering whether a state court decision is based on an

unreasonable application of federal law, the federal district court should "train its attention on the particular reasons - both legal and factual- why state courts rejected a state prisoner's federal claims." *See Wilson* at 1191-1192; *see also Hawthorne v. Sec'y, Fla. Dep't of Corr.,* 786 Fed. Appx. 896 (11th Cir. 2019).

The *Wilson* Court also addressed the federal review of cases where a state appellate court affirmed a lower court's order without reasoning or explanation, as follows:

> "We hold that the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It shoul dthen presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely relied on different grounds than the lower state court's decision, such as an alternative ground for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *See Wilson* at 1192.

In Mr. Hormazabal's case, the state appellate court did not explain the basis for its decision; therefore, pursuant to *Wilson*, this Court should consider the decision and rationale articulated by the state trial court in its orders denying postconviction relief.

## MR. HORMAZABAL WAS PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL

A defendant is entitled to effective assistance of counsel pursuant to the Sixth and Fourteenth Amendments to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the United States Supreme Court established a two-prong test for determining whether a defendant had been provided with ineffective assistance of counsel. First, a defendant must show deficient performance by counsel; the second prong requires a defendant to demonstrate prejudice resulting from deficiencies established in the first prong. *See Strickland* at 668.

"The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncrasies of the particular decisionmaker". *Strickland*, 466 U.S. at 695. "It doesn't matter for prejudice purposes whether the judge at this defendant's trial would have sustained an objection; what counts is whether the judge would have been required to do so under the applicable law and, if so, whether doing so would have resulted in a reasonable probability of a different result". *See Brewster v. Hetzel*, 913 F.3d 1042, 1052 (11th Cir. 2019).

## I.TRIAL COUNSEL MISADVISED MR. HORMAZABAL ABOUT THE POSSIBLE PENALTIES UPON CONVICTION AT TRIAL

Trial counsel performed deficiently by failing to properly and accurately advise Mr. Hormazabal of the maximum penalties, including minimum-mandatory sentences, that he faced upon conviction at trial. Mr. Hormazabal was prejudiced because, as a result of trial counsel's misadvice, he rejected the State's twenty-year plea offer and received a harsher sentence after trial than he would have, had he accepted the offer.

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including plea negotiations. *See Padilla v. Kentucky*, 559 U.S. 356 (2010); *see also Hill v. Lockhart*, 474 U.S. 52 (1985). The decision *not to* accept a plea offer is a vitally important decision and is also a critical stage in which a defendant has a constitutional right to effective assistance of counsel. *See United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435, 438 (3d Cir. 1982).

Effective assistance of counsel in the plea bargaining process includes the proper communication of the relevant facts and evidence, as well as an analysis of the benefits and downfalls of each plea offer. *See U.S. v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)(*citing Von Moltke v. Gillies*, 332 U.S. 708, 721 (1948); *see also Young v. State*, 608 So.2d 111 (Fla. 5th DCA 1992); *see also Revell v. State*, 989 So.2d 751 (Fla. 2d DCA 2008)(trial counsel was

ineffective when he incorrectly advised defendant of possible penalties during the plea negotiation phase).   A defendant has a right to make a reasonably informed decision about whether to accept a plea offer.  *See Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).  A defendant cannot make an informed decision if he is not aware of the possible penalties he faces if he chooses not to accept the offer. *See U.S. v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)(*citing Williams v. State*, 326 Md. 367, 605 (1992); *citing also Commonwealth v. Napper*, 254 Pa. Super. 54 (1978)); *see also Lewis v. State*, 751 So.2d 715 (Fla. 5th DCA 2000).

The record incorporated by the State's written response to Claim Two does not refute Mr. Hormazabal's claim that he was misadvised by trial counsel.  Nonetheless, the state trial court adopted the State's response and concluded that an evidentiary hearing on Claim Two was unnecessary because, *even if* trial counsel misadvised Mr. Hormazabal, there was no prejudice because "even if counsel had not discussed this information with [Mr. Hormazabal, he] was not prejudiced because he was properly advised of the statutory maximums by the Court before expressly rejecting the plea offer". (R.353)

The state trial court's decision is based on an unreasonable determination of the facts in light of the evidence in this case.  The trial court cites a transcript that, on its face, does not support its statement that the trial court advised Mr. Hormazabal of applicable maximums by the court.  The trial court does not advise Mr. Hormazabal that he faced life in prison upon conviction at trial, only advising him that he could be sentenced to "twenty-five years day-for-day, and then a possible additional fifteen on top of the twenty-five". (R.348)  The conversation between the prosecutor and the trial court reflected in the transcript, in which they attempt to figure out, in real time, which sentencing laws apply, cannot reasonably be said to remedy any prejudice caused to Mr. Hormazabal by trial counsel's misadvice on these issues. (R.346-9)

Further, the state trial court's conclusion that any misadvice was remedied is unreasonable in light of the other facts of record.  First, the original charging document, itself, misinformed Mr. Hormazabal of the possible maximum penalties, as it incorrectly labeled Count I, Attempted Second-Degree Murder with Firearm, as a second-degree felony. (R.4; 174)  Second, the prosecutor's statement during the bond hearing, that he would amend Count I "*so it would be a felony of the first-degree*", reflected the

prosecutor's misunderstanding of the penalties imposed by Florida Statute § 775.087(1)(b), which would not actually require an amendment, nor special jury findings, to achieve this outcome. (R.347)  Finally, even the fact that the state trial court sentenced Mr. Hormazabal to an illegal sentence on Count I, without objection from the prosecutor or defense counsel, reflects substantial confusion of the parties regarding the applicable sentencing laws. (R.13)

In *Williams v. State*, 323 So.3d 359 (Fla.2d DCA 2021), the Florida Second District Court of Appeals considered facts similar to those found in Mr. Hormazabal's case.  In *Williams,* the defendant alleged that his trial counsel incorrectly advised him of the maximum penalties he faced upon conviction at trial, and that, had he been properly advised, he would have accepted the State's offer. *Id* at 360.  In *Williams*, the record reflected that, at a pretrial hearing, the prosecutor put the plea offer on the record, stating, "[T]here is a three-year minimum mandatory and it's up to 40 years so we would be offering three-year minimum mandatory today if he was to plea". *Id* at 360.  The Florida Second District Court of Appeals concluded that,

> "While the prosecutor's explanation to the trial court that Mr. Williams faced forty years' imprisonment could, in other circumstances, conclusively refute Mr. Williams' allegation that he would have accepted the State's offer if he had known he faced the

lesser sentence of thirty years in prison, the limited postconviction record does not allow us to reach that conclusion. It does not reflect that the prosecutor accurately calculated Mr. Williams' maximum exposure for this offense at forty years or demonstrate that Mr. Williams had reason to rely on the prosecutor's calculation rather than the trial court's statement." *Id* at 361.

The state trial court's reasoning in Mr. Hormazabal's case departs from the rationale in *Williams* and constitutes an unreasonable application of the United States Supreme Court's decision in *Missouri v. Frye*, 566 U.S. 134 (2012)(*citing Glover v. United States*, 531 U.S. 198 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

In *Missouri v. Frye*, the United States Supreme Court held that, when a defendant alleges that he rejected a plea offer due to the ineffective assistance of counsel, he can demonstrate prejudice by establishing that he would have accepted the plea offer, and the court would have accepted the plea, if not for the ineffectiveness of counsel. *See Frye* at 134. The defendant must also demonstrate that, had he accepted the plea offer, the result would have been more favorable than the result he achieved after trial. *See Frye* at 134 (*citing Glover* v. *United States*, 531 U.S. 198, 203 (2001) ("[A]ny amount of [additional] jail time has Sixth Amendment significance").

Mr. Hormazabal's allegations in Claim Two meet the prejudice standard articulated in *Missouri v. Frye*, as he alleged that trial counsel

failed to advise him of the maximum penalties he faced at trial and, had he been effectively advised, he would have accepted the State's twenty-year plea offer. The record further demonstrates that the State's plea offer, which contemplated twenty years in prison, with a ten-year minimum mandatory sentence and only one felony conviction, would have provided a more favorable result than the twenty-five year minimum mandatory sentence, followed by probation, with two felony convictions, that Mr. Hormazabal received after trial.

Further, the United States Supreme Court held in *Garza v. Idaho*, 139 S.Ct. 738 (2019) and *United States v. Chronic,* 466 U.S. 648, 657 (1984) that no showing of prejudice is necessary "if the accused is denied counsel at a critical stage of his trial". *See Garza*, 139 S.Ct. at 744; *see also Cronic*, 466 U.S. at 659. Plea negotiations are a critical stage of the proceedings. *See Padilla, supra; see also Hill, supra.* When he rejected the State's plea offer, Mr. Hormazabal was effectively acting without counsel, since his trial attorney failed to provide effective representation in helping him to evaluate the deal.

For all of the aforementioned reasons, the state trial court's decision to deny relief on Claim Two constituted an unreasonable application of

clearly established federal law and was based upon an unreasonable

determination of the facts in light of the evidence in the

record.  Accordingly, this Court should grant Mr. Hormazabal habeas

corpus relief and vacate his convictions.

## II. TRIAL COUNSEL FAILED TO PROPERLY OBJECT TO INCLUSION OF JURY INSTRUCTION ON DUTY TO RETREAT

Trial counsel performed deficiently by failing to object to the

inclusion of a jury instruction on criminal activity and the duty to

retreat.  There was no factual basis for the instruction and its inclusion

prejudiced Mr. Hormazabal because the instruction related to his sole

defense and there is a reasonable probability that the instruction confused

the jury.

When an ineffective assistance claim is based on trial counsel's failure

to object to a jury instruction, the defendant must show that "the

instruction was improper, that a reasonably competent attorney would

have objected to the instruction, and the failure to object was prejudicial."

*See Daughtery v. Dugger*, 839 F.2d 1426, 1428 (11th Cir. 1988).  The state laws

that governed a defendant's trial will be used to determine whether

defense counsel committed error related to jury instructions. *See Williams v.

State*, 598 F.3d 778 (11th Cir. 2010).

Florida's standard jury instructions on self-defense can be found in the Florida Supreme Court's Standard Jury Instructions, Section 3.6(f). *See* Fla. Std. Jury Instr. (Crim.) 3.6(f).  In Mr. Hormazabal's trial, the state trial court gave the following instruction:

> "If Freddy Alexander Hormazabal was otherwise engaged in criminal activity or was not in a place he had a right to be, then the use of deadly force was not justified unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to the use of deadly force. The fact that the defendant was wrongfully attacked cannot justify his use of deadly force, if, by retreating, he could have avoided the need to use deadly force. However, if Freddy Alexander Hormazabal was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat, then his use of deadly force was justifiable." (R178-186;277)

Mr. Hormazabal's trial attorney did not object to this portion of the instructions.

The state trial court denied Claim Six, concluding that, because the instruction at issue was a standard instruction, defense counsel had no grounds to object to its inclusion. (R.291)  This rationale is a misapplication of well-settled law.  It is error to give a jury instruction, even if it is a standard jury instruction, if the evidence at trial does not support the instruction. *See Martinez v. State*, 981 So.2d 449 (Fla. 2008); *see also Woodsmall v. State*, 164 So.3d 696 (Fla. 5th DCA 2015); *see also Santiago v. State*, 88 So.

3d 1020 (Fla. 2d DCA 2012); *see also Crimins v. State*, 113 So. 3d 945 (Fla. 5th

DCA 2013); *see also Lindo v. State, 283 So. 3d 867 (Fla. 3d DCA 2019); see also*

*Smith v. State, 76 So. 3d 379 (Fla. 1st DCA 2011); see also Gregory v. State, 141*

*So. 3d 651 (Fla. 4th DCA 2014).* In fact, in its introduction to the instructions,

the Florida Supreme Court reminds,

> "Judges should use great caution in deciding which statutes apply
> and which parts of the instruction are required to be given." *See* Fla.
> Std. Jury Instr. (Crim.) 3.6(f).

The state trial court held that, even if trial counsel could object to a

standard jury instruction, there were no grounds to object in Mr.

Hormazabal's case because there was record evidence that Mr. Hormazabal

was engaged in criminal activity. (R.291)

The Florida Supreme Court explains that the instruction at issue

should be given "when there is evidence that the defendant was engaged

in criminal activity or was not in a place where he or she had a right to

be. *See Morgan v. State*, 127 So.3d 708 (Fla. 5th DCA 2013). Where

appropriate, the court should state or define the applicable criminal

activity that the defendant may have been engaged in." *See* Fla. Std. Jury

Instr. (Crim.) 3.6(f).  Contrary to the state trial court's findings, the evidence

of criminal activity was so indefinite that the instruction included

definitions of battery, assault, and theft. (R.278)  This portion of the instruction was not supported by the facts in the record and served only to confuse the jury and to unfairly prejudice Mr. Hormazabal.

Additionally, in the relevant context, the term "criminal activity" refers to criminal activity which takes place *at the time* a defendant uses deadly force. *See* Florida Statute § 776.012(2); *see also State v. Kirkland*, 276 So.3d 994 (Fla. 5th DCA 2019); *see also Miles v. State*, 162 So.3d 169 (Fla. 5th DCA 2015); *see also Eady v. State*, 229 So.3d 434 (Fla. 2d DCA 2017); *see also Dooley v. State*, 268 So.3d 880 (Fla. 2d DCA 2019); *see also Chavers v. State*, 230 So.3d 35 (Fla. 4th DCA 2017)(defendant carrying a concealed firearm without a license constitutes criminal activity *just prior to* shooting of the victim); *see also Dorsey v. State*, 74 So.3d 521 (Fla. 4th DCA 2011)(common law duty to retreat applied where defendant was engaged in an unlawful activity *at the time he was attacked*)(*citing Dawkins v. State,* 252 1 P.3d 214 (Okla.Crim.App.2011)(holding that the legislature's intent was to address persons *who are actively committing a crime*).

The state trial court notes that Mr. Hormazabal "headed toward the exit door" of the restaurant after allegedly "slapp[ing] the phone from the victim's hand". (R.291)  Notwithstanding this concession, that Mr.

Hormazabal voluntarily left the scene of the confrontation, the state trial concludes that "there was no 'significant temporal break' between the Defendant's alleged criminal act and the use of deadly force". (R.291) The trial court attached a short excerpt of the trial transcript to support its conclusion, which omits relevant portions of the evidence, including the witness's testimony that, after the "phone slapping" incident, Mr. Hormazabal left the restaurant and "went to separate to distance himself." (R.188;TT.44;112)  The state trial court failed to consider that, after Mr. Hormazabal left the scene of the initial confrontation, the victim followed him outside of the building to reinitiate conflict. (R.188;TT.112)

The state trial court found that there could be no prejudice to Mr. Hormazabal because "there is no possibility that the jury would have found the Defendant was authorized to use deadly force". (R.291-2)  The trial court's conclusion is based on a misapplication of relevant law, as the definition of a "deadly weapon" is irrelevant to the jury question regarding whether Mr. Hormazabal's *belief of impending danger* was reasonable. (R.294)  The trial record reflects substantial evidence supporting Mr. Hormazabal's self-defense theory. One witness testified that the victim shouted at Mr. Hormazabal and tried to "detain" him just prior to the

shooting. (R.242;TT.115-6;121-3)  The State introduced Mr. Hormazabal's
statement that, just prior to his use of force, the victim approached him
from behind, saying, "I'm going to fuck you up". (R.242;TT.181)  The
victim admitted approaching Mr. Hormazabal from behind, but, in conflict
with the other evidence, denied saying anything to him. (R.242;TT.49)  The
jury could have reasonably concluded that Mr. Hormazabal was in fear of
imminent death or great bodily harm at the time he used deadly force and
there is a reasonable probability that the erroneous instruction affected the
jury's verdict. *See Bolduc v. State*, 279 So.3d 768 (Fla. 2d DCA 2019).

     The trial court's denial of Claim Six was based on an unreasonable
determination of the facts in light of the evidence presented and
presents  an unreasonable application of *Strickland, supra.*  In *Strickland*, the
United States Supreme Court held that prejudice is established where trial
counsel's performance undermines the fundamental fairness of a
proceeding. *See Strickland* at 696.  In Mr. Hormazabal's trial, both the
prosecutor and the defense attorney relied heavily on the erroneous
instruction during closing arguments. (R.380-4;392;447) The erroneous
instruction related to Mr. Hormazabal's sole defense at trial and its
improper inclusion rendered his trial fundamentally unfair.

Further, even if Mr. Hormazabal could not demonstrate that this error rendered his trial unfair, the United States Supreme Court has held that this second prong of *Strickland* can be satisfied where ineffective assistance of trial counsel adversely affects a defendant's appeal. *See Garza* at 738; *see also Roe v. Flores-Ortega*, 528 U.S. 470 (2000); *see also Davis v. Sec'y, Fla. Dep't of Corr.*, 341 F.3d 1310 (11th Cir. 2003). In *Davis*, the Eleventh Circuit reasons that "*Flores-Ortega* thus establishes that the prejudice showing required by *Strickland* is not always fastened to the forum in which counsel performs deficiently: even when it is *trial* counsel who represents a client ineffectively in the *trial* court, the relevant focus in assessing prejudice may be the client's appeal." *See Davis* at 1316-1318.

On direct appeal, Mr. Hormazabal's appellate counsel argued that the inclusion of the erroneous jury instruction constituted fundamental error. The State, in its Answer Brief, argued that this point should not be considered, as it was not preserved at trial,

> "[Defense] counsel extensively participated in reviewing the jury instructions, including the very instruction at issue here, and discussed [it] in closing argument. This Court should not allow appellants to avoid their lack of preservation of claims by simply alleging that counsel was ineffective. To do so is contrary to statute and makes the long-standing 3.850 procedure superfluous… If [Mr. Hormazabal] wants to claim that his counsel was ineffective, he should follow the procedure designed for such claims." (R.142)

Mr. Hormazabal's direct appeal was adversely affected by his trial counsel's failure to object to inclusion of, and reliance upon, the erroneous jury instruction.

For the aforementioned reasons, the state trial court's denial of Claim Six constituted an unreasonable application of clearly established federal law and was based upon an unreasonable determination of facts. This Court should grant him habeas corpus relief and vacate his convictions.

## IV. TRIAL COUNSEL FAILED TO OBJECT TO PROSECUTOR'S IMPROPER CLOSING ARGUMENTS

Mr. Hormazabal's trial counsel failed to object to the prosecutor's repeated misstatements of the law during closing argument. Mr. Hormazabal was prejudiced by this failure because the improper closing arguments related to Mr. Hormazabal's sole defense.

First, in his closing argument, the prosecutor repeatedly referred to Mr. Hormazabal as the "aggressor", improperly suggesting legal significance of the term. The prosecutor argued,

> "If you're engaged in criminal activity, what the analysis is there, and I'd submit to you that Mr. Hormazabal was the aggressor in this incident, and he was certainly at the very least intentionally touching or striking Mr. Rosario when he grabbed that phone." (R.191;TT.402)

> "He's the aggressor during this." (R.191;TT.419)

The state trial court concluded that the prosecutor's comments were not improper because the question of whether Mr. Hormazabal was the primary aggressor was a relevant fact for the jury to consider.  (R.294)  While the Florida Supreme Court *does* provide a standard jury instruction defining the term and outlining the application of "aggressor", this instruction *was not provided* to the jurors in Mr. Hormazabal's trial. (R.266-288)  Mr. Hormazabal was prejudiced by the prosecutor's use of this term, as it was potentially confusing or misleading to the jury and there was no instruction given to cure this misunderstanding. (R.266-288).

The prosecutor also misstated the law regarding Mr. Hormazabal's burden of proof in establishing self-defense, arguing,

> "The Defense is gonna argue that somehow there was justifiable use of deadly force in this particular case, that Mr. Hormazabal was in fear of death or imminently bodily harm to himself or others, or fear of some sort of attempted aggravated battery, that somehow a manager approaching him from behind approximately nine feet away, if you believe the Defendant's testimony, his prior testimony, somehow that pen was a deadly weapon - and there's -- and you'll get a definition of a deadly weapon, something based on manner of use that's likely to cause death or great bodily harm, and a pen by its ordinary use is a writing instrument." (R. 192;TT.404-5)

> "Well, you'd have to find that a pen is a deadly weapon, and a deadly weapon we look at in terms of the manner of use… So I don't

know how that could be found in this particular case." (R.191;TT. 419)

"The use of deadly force is justifiable if the Defendant reasonably believed that force was necessary to prevent imminent death or great bodily harm to himself while resisting another's attempt to murder him. Well, was Mr. Rosario trying to murder Mr. Hormazabal? Certainly that's not the case." (R.192;TT.418)

"...even if you believe everything he says in both of his statements, everything his family says in their statements, we still do not have a justifiable use of deadly force because he was not protecting himself from another's attempt to murder him or another's attempt to commit aggravated battery upon him. It's not justifiable use of deadly force." (R.193;TT.472)

"David Rosario was not committing an aggravated battery on the Defendant, not even close." (R.193;TT.466)

"Where is the attempt by David Rosario to murder this Defendant? There was none. Where is the attempt by David Rosario to commit an aggravated battery on the defendant? There is none." (R.192;TT.469)

"Again, I'd submit to you that Mr. Rosario did not have a pen in his hand, but even if he did have a pen in his hand, that's not a deadly weapon." (R.316)

In each instance, the prosecutor misstated the relevant law on self-defense, giving the impression that, in order to establish his affirmative defense, Mr. Hormazabal *must* establish that the victim was committing an aggravated battery with a deadly weapon. This is an improper statement of the law, as the law only requires Mr. Hormazabal to establish that "*he reasonably believed* his force was necessary to prevent imminent death or

great bodily harm" (emphasis added). *See* Fla. Std. Jury Instr. (Crim.) 3.6(f);

*see also* Fla. Stat. § 776.012(2). (FN: The prosecutor's comments come from a

portion of the standard jury instructions which relate to §782.02, which was

not applicable. *See* Fla. Stat. §782.02 ("The use of deadly force is justifiable

when a person is resisting any attempt to murder such person or to commit

any felony upon him or her or upon or in any dwelling house in which

such person shall be.").)

    The state trial court summarily denied Claim Eight without a

hearing, concluding that the prosecutor's closing arguments, even if

"inartfully worded" were not prejudicial. (R.294) The trial court concludes

that any improper comments were "isolated and inadvertent", citing *Cole v.

State*, 701 So.2d 845 (Fla. 1997). (R.294)  This characterization represents an

unreasonable determination of the facts, as the record is replete with

instances of improper comment.  The state trial court's focus on the

"inadvertence" of these comments reflects an unreasonable application of

federal law, as the focus should be on the overall fairness of the trial, not

the culpability of the prosecutor. *See also Khianthalat v. Sec'y, Dep't of Corr.*,

Case No. 8:13-cv-2702-T-36TGW, 41 (M.D. Fla. Mar. 30, 2017).

A reviewing court must evaluate improper comments in the context of a prosecutor's entire closing argument, as well as the trial as a whole. *See United States v. Hall*, 47 F.3d 1091, 1098 (11th Cir. 1995). Mr. Hormazabal's sole defense at trial was that he acted in self-defense. Mr. Hormazabal's trial counsel failed to object to a jury instruction which related to his defense, an error which was exacerbated by the prosecutor's frequent misstatements of the law during closing argument. The prosecutor's misstatements of law could not be cured by the complex, confusing, and inaccurate jury instructions.

Mr. Hormazabal should have been afforded an evidentiary hearing on Claim Eight. *See Owens v. State*, 261 So. 3d 585 (Fla. 4th DCA 2018); *see also Sykosky v. State*, 770 So. 2d 207 (Fla. 1st DCA 2000)(where trial counsel fails to object to several instances of improper prosecutorial comment, an evidentiary hearing is proper). The state trial court's decision to deny the claim without a hearing constitutes an unreasonable application of *Strickland* and an unreasonable determination of the facts in this case. For these reasons, this Court should grant Mr. Hormazabal habeas relief and vacate his convictions.

11. <u>If any of the grounds listed in Paragraph 10 were not previously presented in any other court, state or federal, state briefly what grounds were not so presented, and give your reasons for not presenting them:</u>
    All claims were previously raised in the state courts.

12. <u>Do you have any petition, application, appeal, motion, etc., now pending in any court, either state or federal, as to the judgment under attack?</u>
    No.

13. <u>Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein.</u>

    <u>Trial:</u>
    **Spencer Rhodes, Esq.**
    1317 Edgewater Drive #320
    Orlando, FL 32804

    **Richard Rhodes, Esq.**
    PO Box 140172
    Orlando, FL 32814-0172

    **A. Jay Fowinkle, Esq.**
    733 N. Magnolia Ave.
    Orlando, FL 32803-3835

    <u>On appeal:</u>
    **Hon. Paetra Terry Brownlee**
    425 N. Orange Ave. Ste. 1145
    Orlando, FL 32801-1515

WHEREFORE, the Petitioner, FREDDY HORMAZABAL, respectfully requests that this Honorable Court grant all relief to which the Petitioner may be entitled in this proceeding, including but not limited to:

1. An evidentiary hearing.

2. An Order vacating the judgment and sentence in this matter.

3. Such other and further relief as the Court deems just and proper.


Pursuant to Rule 2(c)(5), Rules Governing Section 2254 Cases in the

United States District Courts, I, Lori Wurtzel, acting on behalf of the

Petitioner, Freddy Hormazabal, as his attorney, declare under penalty of

perjury that the foregoing is true and correct.

_____                    _____
LORI WURTZEL                                     4/13/2023
Florida Bar No. 53812                            DATE


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this petition has been furnished by
e-mail delivery to the Office of the Florida Attorney General,
crimappdab@myfloridalegal.com, on this, the 4th day of April, 2023.


                              /s/ Lori Wurtzel
                              LORI WURTZEL, Esq.
                              WURTZEL LAW, PLLC
                              425 W. New England Ave, Ste 200
                              Winter Park, FL 32789
                              Telephone: (407)362-1655
                              lori@wurtzellawpllc.com
                              Florida Bar No. 53812