UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FREDDY HORMAZABAL,

    Petitioner,

v.                                                                          Case No. 6:23-cv-623-WWB-EJK

SECRETARY, DEPARTMENT OF
CORRECTIONS,

    Respondent.
_____/

**ORDER**

THIS CAUSE is before the Court on the Petition for Writ of Habeas Corpus ("**Petition**," Doc. 1) filed by Petitioner under 28 U.S.C. § 2254. Respondents filed a Response to the Petition ("**Response**," Doc. 8) in compliance with this Court's instructions. Petitioner filed a Reply (Doc. 11) to the Response. For the following reasons, the Petition is denied.

**I.   PROCEDURAL HISTORY**

Petitioner was charged by amended information with one count of attempted second degree murder with a firearm (Count One) and one count of shooting into a building (Count Two). (Doc. 9-1 at 57–58). A jury found him guilty as to both counts. (*Id*. at 457–58). The trial court adjudicated Petitioner guilty of the crimes and sentenced him to imprisonment for a term of twenty-five years, to be followed by probation for a term of ten years. (*Id*. at 485–89). Florida's Fifth District Court of Appeal ("**Fifth DCA**") affirmed *per curiam*. (Doc. 9-2 at 618).

Petitioner filed a motion to correct illegal sentence under Florida Rule of Criminal

Procedure 3.800, and the trial court granted the motion in that the sentence as to Count One was corrected to reflect that the term of probation was five years. (*Id*. at 1099–1108). It is not clear from the record whether Petitioner appealed.

Petitioner next filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, which he later amended. (*Id*. at 638–97). The trial court entered an order dismissing the motion because it was unsworn. (*Id*. at 791–92). Petitioner filed another amended Rule 3.850 motion, and the trial court entered an order setting a status hearing as to Ground One and denying Grounds Two through Five. (*Id*. at 962–66). The trial court then entered an order denying Grounds Six through Eight and reaffirming the status of the hearing on Ground One. (*Id*. at 910–16). Petitioner subsequently withdrew Ground One, and the trial court entered an order dismissing Ground One. (*Id*. at 951–52). The Fifth DCA affirmed *per curiam*. (*Id*. at 1095).

## II.  LEGAL STANDARDS

### A.  Standard Of Review Under The Antiterrorism Effective Death Penalty Act ("AEDPA")

Under the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the Supreme Court of the United States "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

2

A federal habeas court must identify the last state court decision, if any, that adjudicated the claim on the merits. *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016). Where the state court's adjudication on the merits is unaccompanied by an explanation, the habeas court should "look through" any unexplained decision "to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds briefed or argued to the higher court or obvious in the record it reviewed. *Id*. at 1192–93, 1195–96.

For claims adjudicated on the merits, "section 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001). "For a state-court decision to be an 'unreasonable application' of Supreme Court precedent, it must be more than incorrect— it must be 'objectively unreasonable.'" *Thomas v. Sec'y, Dep't of Corr.*, 770 F. App'x 533,

536 (11th Cir. 2019) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

Under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  A determination of a factual issue made by a state court is presumed correct, and the habeas petitioner must rebut the presumption of correctness by clear and convincing evidence.  *See Parker*, 244 F.3d at 835–36; 28 U.S.C. § 2254(e)(1).

Where the state court applied the correct Supreme Court precedent, the federal court must consider whether the state court unreasonably applied that precedent or made an unreasonable determination of the facts.  *Whatley v. Warden*, 927 F.3d 1150, 1181 (11th Cir. 2019).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Id.* at 1175 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  Federal courts may review a claim *de novo* only if the state court's decision was based on an unreasonable application of Supreme Court precedent or an unreasonable determination of the facts.  *Id.*

### B. Standard For Ineffective Assistance Of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief because his counsel provided ineffective assistance.  466 U.S. 668, 687–88 (1984).  To prevail under *Strickland*, a petitioner must demonstrate "(1) that his trial 'counsel's performance was deficient' and (2) that it 'prejudiced [his] defense.'"  *Whatley*, 927 F.3d at 1175 (quoting *Strickland*, 466 U.S. at 687).

4

Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he [petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

### III.    ANALYSIS

#### A.    Claim One

Petitioner argues that counsel was ineffective for misadvising him about the possible penalties upon conviction. (Doc. 1 at 11–12). According to Petitioner, he rejected the State's plea offer of twenty years' imprisonment and "received a harsher sentence after trial than he would have, had he accepted the offer." (*Id*. at 12). This claim was raised in Petitioner's Rule 3.850 motion and was denied because the plea offer "was placed on the record, . . . and the Defendant was advised of the maximum sentence he was facing, and the maximum potential sentences he was facing if he rejected the offer and the State filed the amended information." (Doc. 9-2 at 963).

At the bond hearing, the State informed the trial court about the plea offer:

> The State had made an offer to Mr. Hormazabal on the attempted second degree murder. We're going to amend it so it would be a felony of the first degree, but the offer was adjudicate guilty, twenty years in the Department of Corrections with ten years as minimum mandatory pursuant to the ten/twenty/life statute. A judgment in favor of the Altamonte Springs Police Department for cost of investigation in the amount of one thousand eight hundred and fifty-six dollars and two cents. Hundred dollar cost of prosecution and court costs.
>
> In the event that Mr. Hormazabal rejects that offer today, we have an amended information to charge Mr. Hormazabal with attempted second degree murder reclassified while inflicting great bodily harm. So -- as well

5

> as shooting into a building, which is a felony of the second degree, and what we have done in the amended information is to add the discharge causing great bodily harm, *so if found guilty, he would be facing twenty-five years minimum day-for-day in the Department of Corrections up to life under the ten/twenty/life statute, and he'd also be subject to the maximum penalty of fifteen years on the shooting into a building.*

(Doc. 9-1 at 864–65 (emphasis added)). Petitioner informed the trial court he heard "what the State said," that he had discussed the matter with his attorney, and that he wished to reject the plea offer. (*Id*. at 866).

Petitioner was advised of the maximum potential sentence he was facing if he accepted the plea offer and the maximum potential sentence of twenty-five years' imprisonment he was facing if he rejected the plea offer and the State filed an amended information. Petitioner chose to reject the plea offer after being fully informed as to the consequences of doing so, which included the maximum sentence he was facing.

Petitioner has failed to demonstrate that his counsel acted deficiently or that he sustained prejudice. The Court addresses the claim under the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Claim One will be denied.

**B.   Claim Two**

Petitioner argues that counsel was ineffective for failing to "properly object to inclusion of [the] jury instruction on duty to retreat." (Doc. 1 at 18). Petitioner argues there "was no factual basis for the instruction and its inclusion prejudiced [him] because the instruction related to his sole defense and there is a reasonable probability that the

6

instruction confused the jury." (*Id*.). This claim was raised in Petitioner's Rule 3.850 motion and was denied. The trial court determined that (1) the "language that the Defendant asserts trial counsel should have objected to was part of the standard jury instruction applicable to his case" and had not been invalidated by the Florida Supreme Court; (2) under the facts of the case, Petitioner did not have the right to stand his ground and use deadly force; and (3) there was no showing of prejudice. (Doc. 9-2 at 911–13).

Petitioner identified the following instruction as objectionable:

If Freddy Alexander Hormazabal was otherwise engaged in criminal activity or was not in a place he had a right to be, then the use of deadly force was not justified unless he used every reasonable means within his power and consistent with his own safety to avoid the danger before resorting to the use of deadly force. The fact that the defendant was wrongfully attacked cannot justify his use of deadly force, if, by retreating, he could have avoided the need to use deadly force. However, if Freddy Alexander Hormazabal was placed in a position of imminent danger of death or great bodily harm and it would have increased his own danger to retreat, then his use of deadly force was justifiable.

(Doc. 9-2 at 502). As discussed by the trial court:

The language that the Defendant asserts trial counsel should have objected to was part of the standard jury instruction applicable to his case. This language has not been invalidated by the Florida Supreme Court. As the instruction completely and correctly sets forth the applicable law on justifiable use of deadly force in self defense, there is no basis to provide an incomplete instruction to the jury. Pursuant to binding Florida Supreme Court caselaw, counsel cannot be deemed ineffective for not objecting to a standard jury instruction that has not been invalidated by the Florida Supreme Court. *Thompson v. State*, 759 So. 2d 650, 665 (Fla. 2000); *Krawczuk v. State*, 92 So. 3d 195, 205 (Fla. 2012). Defendant has not cited to, nor has this Court found, a Florida Supreme Court case invalidating this portion of the instruction. As the trial court gave the standard jury instructions, and the Florida Supreme Court has not invalidated said instructions, Defendant cannot establish that trial counsel was ineffective.

(*Id*. at 912).

Additionally, Petitioner did not have the right to stand his ground because he was

7

engaged in a criminal activity. Under the facts of the case,

> the Defendant slapped the phone from the victim's hand and then immediately headed toward the exit door. There was no "significant temporal break" between the Defendant's alleged criminal act and the use of deadly force; the shooting happened within a matter of seconds after the Defendant's criminal action. (See excerpt of trial transcript, attached as Exhibit A). Under the facts of this case, the Defendant did not have the right to stand his ground and utilize deadly force because he was engaged in a criminal activity.

(*Id*.).

In addition, there was no prejudice. Although Petitioner testified that the victim followed him holding a pen, (*Id*. at 193), the trial court found that "the pen was not brandished as a weapon or used in any threatening manner . . . . Because it was not being used in a manner that would characterize it as a deadly weapon, [Petitioner's] belief that it would cause imminent death or great bodily harm was not reasonable."[1] (*Id*. at 913). As such, "there is no possibility that the jury would have found [Petitioner] was authorized to use deadly force." (*Id*.).

Petitioner has failed to demonstrate that his counsel acted deficiently or that he sustained prejudice. The Court addresses the claim in accordance with the deferential standard for federal court review of state court adjudications. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision was

---

[1] The victim testified that he first contacted Petitioner at the counter. (Doc. 9-2 at 45). The victim asked Petitioner to sign the refund receipt, and Petitioner then "snatch[ed] the pen and paper out of [his] hand." (*Id*.). The victim provided the refund amount of "about $2 and some change" to Petitioner and asked Petitioner to leave the premises after Petitioner was "cuss[ing] [him] out." (*Id*. at 45–46). Petitioner kept "cussing [him] out," and the victim pulled out his cellular telephone to "call the authorities." (*Id*. at 47). Petitioner then "slap[ped] [the phone] out of [his] hand." (*Id*.). Petitioner then exited the restaurant, the victim followed Petitioner outside, and Petitioner shot him. (*Id*.). The victim did not grab the pen back from Petitioner. (*Id*. at 75).

8

neither contrary to, nor an unreasonable application of, *Strickland* and was not based on an unreasonable determination of the facts given the evidence presented to the state court. *See* 28 U.S.C. § 2254(d). Claim Two will be denied.

### C.   Claim Three

Petitioner argues that counsel "failed to object to the prosecutor's repeated misstatements of the law during closing argument." (*Id*. at 25). First, he alleges that "the prosecutor repeatedly referred to [him] as the 'aggressor,' improperly suggesting legal significance of the term." (*Id*.). Next, Petitioner alleges that the prosecutor "misstated the law regarding [his] burden of proof in establishing self-defense . . . ." (*Id*. at 26). This claim was raised in Petitioner's Rule 3.850 motion and was denied because "there was no improper argument." (Doc. 9-2 at 915).

"[T]o establish prosecutorial misconduct, a two-prong test must be satisfied: (1) the prosecutor's comments must have been improper; and (2) the comments must have rendered the trial fundamentally unfair." *McDavid v. Fla. Dep't of Corr.*, No. 4:16CV30/WS/EMT, 2017 WL 2790062, at *21 (N.D. Fla. May 18, 2017). Under Florida law, "[a] mistrial will be granted only when the error is so prejudicial as to vitiate the entire trial." *See Salazar v. State*, 991 So. 2d 364, 372 (Fla. 2008). Moreover, in Florida,

> wide latitude is permitted in presenting opening and closing statements to a jury, and comments by the prosecutor will merit a mistrial only when they deprive the defendant of a fair and impartial trial, materially contribute to the conviction, are so harmful or fundamentally tainted as to require a new trial, or are so inflammatory they might have influenced the jury to reach a more severe verdict than it would have otherwise rendered.

*Miller v. State*, 161 So. 3d 354, 382 (Fla. 2015).

The first statement deals with the prosecutor referring to Petitioner as the aggressor. This issue is without merit. As discussed by the trial court, it was not improper

9

for the prosecutor to argue that Petitioner was the aggressor since the prosecutor was arguing that Petitioner initiated the aggression, not the victim.  Using the term operated as a statement of fact rather than a term of legal significance.

Petitioner argues in the second issue that "the prosecutor misstated the relevant law on self-defense, giving the impression that, in order to establish his affirmative defense, Mr. Hormazabal must establish that the victim was committing an aggravated battery with a deadly weapon."  (Doc. 1 at 27).  According to Petitioner, "[t]his is an improper statement of the law, as the law only requires Mr. Hormazabal to establish that "*he reasonably believed* his force was necessary to prevent imminent death or great bodily harm" (emphasis added)."  (*Id*. at 27–28).  The trial court found that "the State's argument about the Defendant's assessment of the victim's threat was inartfully worded, but not so prejudicial as to vitiate the trial."  (Doc. 9-2 at 915).

Assuming the prosecutor's comment was an incorrect statement of the law, the prosecutor corrected the misstatement:

> Now, here you'll have in deciding whether the Defendant was justified in the use of deadly force, you must consider the circumstances that surround him. The danger need not have been actual. However, to justify the use of deadly force, the appearance of danger must have been so real that a reasonable cautious and prudent person under the same circumstances would have believed that the danger could have been avoided only through the use of that force.

(*Id*. at 424).  This statement, along with the jury instructions, corrected any prior misstatement.

Here, Petitioner has failed to show that counsel's failure to object to the prosecutorial comments that Petitioner identified constituted deficient performance.  Upon review of the entirety of the comments by the prosecutor and defense counsel during

10

opening statements and closing arguments, and in the context of the evidence adduced at trial, the state court reasonably concluded that counsel's failure to object was not unreasonable.

In addition, the state court reasonably concluded that Petitioner failed to show a reasonable probability that the result of trial would have been different had counsel objected to the prosecutor's comments. Petitioner has failed to demonstrate that the state court's adjudication of this claim was contrary to, or an unreasonable application of, *Strickland*. Therefore, Claim Three will be denied.[2]

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*; *Lamarca*, 568 F.3d at 934. However, a prisoner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

---

[2] Any allegations not specifically addressed have been found to be without merit.

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable. Petitioner has failed to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny Petitioner a certificate of appealability.

**V.   CONCLUSION**

Accordingly, it is **ORDERED** and **ADJUDGED** as follows:

1. The Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.
2. Petitioner is **DENIED** a Certificate of Appealability.
3. The Clerk of the Court is directed to enter judgment accordingly and close this case.

**DONE** and **ORDERED** in Orlando, Florida on November 4, 2024.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record